

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1225-19

### ORLANDO BELL, Appellant

### v.

### THE STATE OF TEXAS

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SEVENTH COURT OF APPEALS
### BURLESON COUNTY

*Per curiam.* SLAUGHTER, J., filed a concurring opinion in which YEARY, J., joined.

## O P I N I O N

If a punishment-phase jury charge fails to properly track the language in the

habitual-offender statute[1] by misstating the statute's sequencing requirement (that the

---

[1] TEX. PENAL CODE § 12.42(d) ("[I]f it is shown on the trial of a felony offense other than a state jail felony punishable under Section 12.35(a) that the defendant has previously been finally convicted of two felony offenses, *and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final*, on conviction the

second prior felony conviction must have been committed after the first prior felony conviction became final), should the resulting error be treated as an illegal sentence, or should it instead be treated as jury-charge error subject to a harm analysis? We hold that the latter is correct. Accordingly, we reverse the judgment of the court of appeals which held that such error resulted in an illegal sentence, and we remand the case for a harm analysis.

## I.      Background

Appellant was charged with failure to timely report a change of address in violation of his sex-offender-registration obligations under Code of Criminal Procedure Chapter 62, which as applied to these circumstances was a third-degree felony. TEX. CODE CRIM. PROC. art. 62.055(a); 62.102(b)(2). At trial, the State sought to enhance Appellant's punishment under the habitual-offender statute by alleging that he had twice previously been convicted of a felony offense, thereby subjecting him to a possible range of punishment from twenty-five to ninety-nine years' imprisonment or life. TEX. PENAL CODE § 12.42(d). To this end, the State filed a "Notice of Intent to Use Prior Convictions for Enhancement of Punishment" that identified two prior felony convictions. The first was for delivery of a controlled substance (Cause No. 10,560), for which Appellant was adjudicated guilty on September 9, 1994, and filed no notice of appeal.[2] The second was for engaging in organized criminal activity (Cause No. 11,724) committed on August 21, 1997.

---

defendant shall be punished by imprisonment in the Texas Department of Criminal Justice for life, or for any term of not more than 99 years or less than 25 years.") (emphasis added).

[2] The State's notice incorrectly referred to the year the first prior conviction became final as 1991, as opposed to 1994. But the pen packet admitted at the punishment phase correctly reflected the date in 1994 upon which Appellant was adjudicated guilty for that offense.

Following a trial by jury, Appellant was found guilty of the failure-to-register offense. At punishment, the unobjected-to jury charge mistakenly instructed the jury to find the enhancement allegations true if it found that Appellant's second prior felony conviction became final after the commission of the first felony offense.[3] The correct statutory language in Section 12.42(d), however, requires a finding that the first conviction became final prior to the commission of the second felony. TEX. PENAL CODE § 12.42(d) (requiring proof that "the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final"). But the prosecutor effectively articulated the correct law in closing argument:

> Our law says that a person commits a felony offense, goes to prison for that offense, gets out, commits a new felony offense, goes to prison for that offense, gets out and commits another, the minimum is 25 years. That's the law. And that's what the State is asking you to do. Find that in fact he is one

---

[3] The instructions specifically stated:

> In paragraph (2) it is alleged that the defendant was convicted on the 9th day of September, A.D. 1991, in Cause No. 10,560 in the 21st Judicial District Court of Burleson County, Texas, for the felony offense of Delivery of a Controlled Substance Listed in Penalty Group 1, less than 28 grams, which said conviction had become a final conviction prior to the commission of the offense for which you have just found him to be guilty.

> In paragraph (3) it is alleged that the defendant was convicted for the felony offense of Engaging in Organized Criminal Activity on the 5th day of November, A.D. 1997, in Cause No. 11,724 in the 21st Judicial District Court of Burleson County, Texas, *and that such conviction became a final conviction prior to the commission of the offense for which you have found him guilty and after the commission of the offense charged in paragraph (2) of this indictment.*

> You are instructed that if you find beyond a reasonable doubt that this defendant is the same person who was convicted in paragraphs (2) and (3) of this indictment and that such conviction occurred as alleged, then you will find the allegations true and so state in your verdict and you will assess punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for life or for any term of not more than 99 years or less than 25 years.

and the same individual that in Cause No. 10,560 went to prison, that after he got out of prison for this cause number, he committed the second offense, Cause No. 11,724, and he went to prison. And when he came back out, he committed the offense that you found him guilty for today.

The jury found the enhancements true and assessed a sentence of fifty years' imprisonment, which was within the permissible range of punishment for habitual offenders under Section 12.42(d) but longer than the maximum allowable sentence for an unenhanced third-degree felony offense.

On direct appeal, the Seventh Court of Appeals rejected Appellant's sole argument that the evidence was insufficient to support his conviction.[4] *Bell v. State*, No. 07-18-00173-CR, 2019 WL 6766462, at \*5 (Tex. App.—Amarillo July 24, 2019) (mem. op., not designated for publication). The court, however, *sua sponte* determined that the punishment-phase jury instructions did not properly authorize the enhancements. Specifically, the instructions misstated the language of Section 12.42(d) by failing to require a jury finding that "the second prior felony conviction was both final and for an offense that occurred subsequent to the first prior felony conviction having become final." *Id.* at \*1.[5] In the absence of a proper jury finding on the sequencing requirement, the court held that Appellant's fifty-year sentence was "illegal" and "void" because it exceeded the

---

[4] Specifically, Appellant contended that the evidence showed he had not actually moved from the residence where he was registered, as the State had alleged, but instead continued to reside there. 2019 WL 6766462, at \*5.

[5] Although Appellant did not challenge this matter on appeal, the court held that it could properly review the issue as "unassigned error"—that is, as "a claim that was preserved at trial but was not raised on appeal." *Bell,* 2019 WL 6766462, at \*5 (citing *Sanchez v. State*, 209 S.W.3d 117, 120-21 (Tex. Crim. App. 2006)). It also reasoned that, regardless of whether error was preserved, an illegal sentence is an "'absolute and non-waivable right'" under the rubric of *Marin v. State. Id.* (citing 851 S.W.2d 275, 279 (Tex. Crim. App. 1993)).

maximum punishment allowed for an unenhanced third-degree felony. *Id.* at *1, *5. The court then remanded the case for a new punishment hearing. *Id.* at *5.

The State filed a motion for rehearing, conceding that the instructions were erroneous but arguing that the court of appeals erred in analyzing this defect as an illegal sentence. Relying on this Court's decision in *Niles v. State,* the State contended that a jury charge's omission of an element that raises the range of punishment is error subject to a harm analysis. *See* 555 S.W.3d 562 (Tex. Crim. App. 2018). In a memorandum opinion on rehearing, the court of appeals rejected the State's argument by holding that *Niles* was distinguishable. *Bell v. State*, No. 07-18-00173-CR, 2019 WL 6205460 (Tex. App.—Amarillo Nov. 19, 2019). It explained that in *Niles*, the omitted jury finding was "an element of the offense itself" (there, in a prosecution for class A misdemeanor terroristic threat, whether the victims were public servants), whereas here "we are not dealing with an omitted element of the offense. Instead we are dealing with the omission of a fact finding essential to the determination of the applicable range of punishment." *Id.* at *2. Thus, the court held that the State had waived its right to seek the enhanced punishment by failing to request and obtain a finding essential to the enhancement. *Id.* Further, the court reasoned that even assuming this type of error would be subject to a harm analysis, the State's "'failure to prove the chronological sequence of punishment enhancement allegations as required under Section 12.42(d) . . . will never be considered harmless.'" *Id.* (quoting *Jordan v. State*, 256 S.W.3d 286, 292 (Tex. Crim. App. 2008)).

The State filed a petition for discretionary review in which it contends that the court of appeals erred by treating the defect in the punishment-phase jury instructions as an

illegal sentence, rather than as charge error subject to a harm analysis. We granted review of two grounds in the State's petition to consider this issue.[6]

## II.    Analysis

We agree with the State's position that under this Court's precedent, the flaw in the jury instructions was not properly analyzed as an illegal sentence and that the error at issue was instead jury-charge error subject to a harm analysis. We therefore reverse the court of appeals' judgment. Because the court of appeals has not yet considered the question of harm, we remand the case for the court of appeals to examine that issue in the first instance.

An illegal sentence is "one that is not authorized by law; therefore, a sentence that is outside the range of punishment authorized by law is considered illegal." *Ex parte Pue*, 552 S.W.3d 226, 228 (Tex. Crim. App. 2018); *see also Ex parte Seidel,* 39 S.W.3d 221, 225 n. 4 (Tex. Crim. App. 2001) ("[T]his Court has long held that a sentence is void when the punishment is unauthorized."). "An illegal sentence is distinguishable from a procedural irregularity or an inaccurate judgment[.]" *Ex parte Rich,* 194 S.W.3d 508, 511 (Tex. Crim. App. 2006). If a defendant's range of punishment is improperly enhanced, in the sense that the prior convictions alleged do not actually support enhancement under the applicable statutory provision, then the defendant has been sentenced in violation of the law and his sentence is "illegal." *Id.* at 511-12.

---

[6] The State's petition asks,

1. Should error in the punishment enhancement charge be reviewed as charge error rather than as an "illegal sentence"?

2. What standard of harm applies to charge errors that authorize a greater punishment?

In contrast, jury-charge error stems from the denial of a defendant's right to have the trial court provide the jury with instructions correctly setting forth the "law applicable to the case." *Posey v. State*, 966 S.W.2d 57, 62 (Tex. Crim. App. 1998); TEX. CODE CRIM. PROC. art. 36.14. A trial judge is obligated to instruct on the law applicable to the case, for "'the trial judge is ultimately responsible for the accuracy of the jury charge and accompanying instructions.'" *Mendez v. State*, 545 S.W.3d 548, 552 (Tex. Crim. App. 2018) (quoting *Delgado v. State,* 235 S.W.3d 244, 249 (Tex. Crim. App. 2007)). Further, in *Almanza v. State*, this Court expressly held that errors in the jury instructions do not warrant "automatic reversal" and are instead subject to a harm analysis. 686 S.W.2d 157, 174 (Tex. Crim. App. 1985) (op. on reh'g). Thus, under *Almanza*'s "dual standards of review," a defendant may obtain reversal through a claim of charge error upon a showing of "some harm" if he objected to such error at trial, or upon a showing of "egregious harm" if he did not object. *Mendez*, 545 S.W.3d at 552.

In its brief on discretionary review, the State contends that under this Court's decision *Niles v. State*, 555 S.W.3d 562, the court of appeals erred by treating the instant error as an illegal sentence. In *Niles*, the defendant was charged with two counts of terroristic threat of a public servant, a class A misdemeanor. *Id.* at 564. Niles was arraigned, tried, convicted, and sentenced on the two Class A counts. *Id.* But the jury charge erroneously omitted the element requiring a finding that the victims were public servants. Thus, as worded, the jury charge tracked the statutory language of simple terroristic threat, a class B misdemeanor. *Id*. After Appellant appealed and argued that his sentence was illegal because he had been sentenced outside the permissible range of punishment for the

Class B offense, the court of appeals reversed and remanded for a new sentencing hearing, but this Court reversed that determination and remanded to the court of appeals for a harm analysis. *Id.* at 573.

In our *Niles* analysis, we recognized that pursuant to Supreme Court precedent, any fact other than the fact of a prior conviction that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. *Id.* at 570 (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)). We reasoned that this included sentencing factors which are legally indistinguishable from elements of the offense for these purposes. *Id.* ("[S]entencing factors, like elements, are facts that have to be tried to the jury and proved beyond a reasonable doubt."). But in spite of this requirement, we observed that "a failure to instruct the jury on one element of an offense or a failure to submit a sentencing issue to the jury under *Apprendi* is not structural error; it is subject to a harm analysis." *Id.* at 572. Applying these principles to Niles' case, we rejected his contention that his sentence was illegal because this "was not an illegal sentence case" but was instead an *Apprendi*-type error arising from the omission of an element from the jury instructions. *Id.* at 573. Because such error was not structural and was subject to a harm analysis, we reversed and remanded the case to the court of appeals for it to conduct such analysis in the first instance. *Id*.

*Niles* is of course distinguishable from this case in several respects, but its holding nevertheless applies here and means that, contrary to the court of appeals' conclusion, the error in this case does not amount to an illegal sentence. In *Niles*, the element requiring a finding that the offense was against a public servant was erroneously omitted from the jury

instructions entirely. Thus, the error in *Niles* was more egregious than the one at issue here. In this case, the charge included language addressing the sequencing of the convictions, but that language failed to properly track the statutory requirements. If the error in *Niles* involving a complete omission of an element that raised the range of punishment did not result in an illegal sentence, then the lesser error here involving an erroneously-worded punishment charge certainly does not rise to the level of an illegal sentence.

The court of appeals distinguished the case at hand from *Niles* by reasoning that *Niles* was concerned with an omitted element of the primary offense (there, the statutory element requiring proof that the victims were public servants), whereas this case concerns a mere sentencing enhancement necessary to determine the appropriate punishment range. *Bell,* 2019 WL 6205460, at *2. As noted above, however, we already effectively rejected this argument in *Niles* itself, and we agree with the State that any such distinction has no legally-significant impact in this context. Therefore, *Niles* signals that the instant defect should not have been treated as an illegal sentence. Instead, the error at issue falls under our framework for analyzing a failure of the charge to correctly set forth the "law applicable to the case," which is error subject to a harm analysis under *Almanza*. *See Posey*, 966 S.W.2d at 62; *Almanza*, 686 S.W.2d at 174.

With respect to the issue of harm, the court of appeals cited this Court's decision in *Jordan v. State* for the proposition that, even assuming a harm analysis would apply here, the State's "failure to prove the chronological sequence of punishment enhancement allegations" under Section 12.42(d) "will never be considered harmless." *See Bell*, 2019 WL 6205460, at *2 (citing 256 S.W.3d 286, 292 (Tex. Crim. App. 2008)). That language

from *Jordan*, however, is inapposite here because this case does not involve a failure of proof with respect to the proper sequencing of the prior convictions, which was the issue in *Jordan*. In *Jordan*, we observed that the record was insufficient for the jury to find the requisite sequencing of Jordan's prior convictions because the penitentiary packet submitted by the State did not provide the date of commission of the second relied-upon felony offense. 256 S.W.3d at 289. By contrast, here, the penitentiary packet clearly establishes that Appellant's conviction for the first prior felony on which the State relies became final in September 1994, and the commission of the second prior felony occurred three years later, in August 1997. Indeed, no one appears to dispute that the underlying convictions support the alleged enhancement here. The only issue in this case is the erroneous wording in the charge, which, for reasons we have already explained, is subject to the *Almanza* framework for analyzing charge error. This case, therefore, is not a case of insufficient proof as in *Jordan,* and the court of appeals' reliance on that case for the proposition that harm is a foregone conclusion was misplaced.

In sum, our decision in *Niles* supports the State's position that the defective instructions in this case should be treated as jury-charge error subject to a harm analysis, rather than as an illegal sentence that generally automatically entitles a defendant to a new punishment hearing. The State urges us to reach the issue of harm in this proceeding on discretionary review, but because the court of appeals has not yet conducted a proper harm analysis, we decline to reach that issue. Therefore, we remand the case to the court of appeals for it to address the question of harm in the first instance.

## II.    Conclusion

The court of appeals erred by treating the defect in the punishment-phase jury instructions as an illegal sentence which automatically entitled Appellant to a new punishment hearing. Because we conclude that the unobjected-to error was jury-charge error subject to a harm analysis, we reverse the judgment of the court of appeals and remand the case for further proceedings consistent with this opinion.

DELIVERED: December 8, 2021
PUBLISH